

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT 19 2011

CLERK, U.S. DISTRICT COURT
By_____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AARON MARTIN, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:08-CV-490-D |
| v. | § | |
| | § | (Consolidated with Civil Action Nos. |
| | § | 3:08-CV-0494-D, 3:08-CV-0502-D, |
| GEORGE ZOLEY, et al., | § | 3:08-CV-0505-D, 3:08-CV-0974-D, |
| | § | 3:08-CV-1034-D, 3:08-CV-1101-D, |
| | § | 3:08-CV-1185-D, 3:08-CV-1299-D, |
| Defendants. | § | 3:08-CV-1495-D, and 3:08-CV-1768-D) |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and a standing order of reference, the District Court referred all dispositive motions to the United States Magistrate Judge for findings, conclusions, and recommendation. Before the Court for consideration is the Motion for Summary Judgment of Defendants Ananda Babbilli, Kerri Hocking, Debbie Iredell, and Dr. Subhash Joshi with respect to Plaintiff Willie E. Hardeman's ("Hardeman" or "Plaintiff") claims against them (doc. 379.) The findings, conclusions and recommendation of the Magistrate Judge follow:

**FINDINGS AND CONCLUSIONS:**

At all relevant times, Plaintiff was an inmate housed at the Sanders Estes Unit of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJCID), in Venus, Texas. Currently, he is an inmate in the Jefferson County Correctional Facility in Beaumont, Texas. Defendants ("Movants") were employed by the University of Texas-Medical Branch-Correctional Managed Care (UTMB) at all relevant times. Babbilli, a Physicians Assistant, Hocking, a Licensed Vocation Nurse, Iredell, a Registered Nurse, and Dr. Joshi, a Medical Doctor, were all assigned to

the Sanders Estes Unit Medical Department.  Hardeman alleges that Movants refused to treat him after his December 19, 2007 exposure to smoke from a sub-roof fire and were thus deliberately indifferent to his serious medical needs.  Plaintiff requests monetary relief.

To prevail on a motion for summary judgment, the moving party has the initial burden of showing that there is no genuine issue of any material fact and that judgment should be entered as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2509-10 (1986). Once the moving party has made an initial showing, the party opposing the motion for summary judgment may not merely rely on his pleadings, but must come forward with competent evidentiary materials that establish a genuine fact issue. *Anderson,* 477 U.S. at 256-257, 106 S. Ct. at 2514; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87, 106 S. Ct. 1348, 1355-56 (1986).

Plaintiff has not responded to Movants' motion for summary judgment.[1] While his failure to respond does not permit the entry of a "default" summary judgment, the court has the authority to accept Defendant's evidence as undisputed. *See Eversley v. Mbank Dallas,* 843 F.2d 172, 174 (5th Cir. 1988). *See also Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998) (party

---

[1]  After the summary judgment motion had been filed, Plaintiff filed a pleading entitled "Seek's Summary Judgment with counsel appointed . . . " (doc. 379).  In the pleading, Plaintiff states that he seeks summary judgment to be established by the medical records. He claims he is now having breathing problems and that the medical staff treated the inmates worse than second class citizens or slaves. He contends the doctors damaged his liver by giving him Ibuprophen for Hepetitis C and that the medical treatment "went down hill" when the good nurses, like Ms. Hamilton, quit. (Doc. 379 at 2.)

Even if this could be considered a response to Movant's Motion for Summary Judgment, the pleading contains nothing but conclusory allegations and unsupported accusations. Accordingly, the Court concludes that Plaintiff failed to point to competent summary evidence as required by FED. R. CIV. P. 56(c).

opposing summary judgment is required to identify specific evidence in the record and articulate the precise manner in which that evidence supports her claim). Therefore, the court accepts Movants' evidentiary assertions as undisputed. *See Ragas,* 136 F.3d at 458 (court does not have the duty to sift through the record in search of evidence to support a party's opposition to summary judgment); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n. 17 (5th Cir. 1992).

Movants are employees of the University of Texas Medical Branch ("UTMB"). Insofar as Plaintiff sues Movants in their official capacity, the complaint is considered to be a suit against the official's government agency by which they were employed. As a result, the complaint would be barred by sovereign immunity as a suit against the state itself. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71, 109 S.Ct. 2304, 2312 (1989); *see also Aguilar v Texas Dep't of Crim. Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998) (the Eleventh Amendment cloaks State instrumentalities such as UTMB with immunity from suits for damages). Therefore, Movants, in their official capacity, are entitled to summary judgment on the basis of Eleventh Amendment immunity.

To the extent Plaintiff sues Movants in their individual capacity, they are entitled to summary judgment on the basis of qualified immunity. The doctrine of qualified immunity shields state officials from suit "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McClendon,* 305 F.3d at 322 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). To determine whether an official is entitled to qualified immunity from a suit alleging a constitutional violation, the court conducts a familiar two-step inquiry: First the court determines whether plaintiff's allegations allege facts to establish that the official violated the plaintiff's constitutional rights. *Hope*

3

*v. Pelzer,* 536 U.S. 730, 736, 122 S. Ct. 2508, 2513 (2002). Whether the facts establish a violation

of a constitutional right is determined with reference to current law. *See Atteberry v. Nocona Gen.*

*Hosp.,* 430 F.3d 245, 253 (5th Cir. 2005); *McClendon,* 305 F.3d at 323. Second, the court must

decide if the right at issue was "clearly established" at the time of defendant's alleged misconduct.

*See McClendon,* 305 F.3d at 323. Courts may "exercise their sound discretion in deciding which of

the two prongs of the qualified immunity analysis should be addressed first in light of circumstances

in the particular case at hand." *Pearson v. Callahan,* ___ U.S. ___, 129 S.Ct. 808, 818 (2009),

receding from *Saucier v. Katz,* 533 U.S, 194, 121 S. Ct. 2151 (2001).

To state a colorable claim under the Eighth Amendment for denial of medical care, convicted

inmates must allege acts or omissions "sufficiently harmful to evidence a deliberate indifference to

serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976); *Norton v.*

*Dimazana,* 122 F.3d 286, 291 (5th Cir. 1997).   "Deliberate indifference encompasses only

unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Norton,* 122

F.3d at 291. It occurs when a prison official subjectively knows of and disregards a substantial risk

to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837-840, 114 S. Ct. 1970, 1979-

81 (1994).  A disagreement of opinion as to the correct medical treatment does not constitute

cognizable civil rights claims, but at most, a possible claim of medical malpractice appropriately

addressed under state law. *E.g. Estelle*, 429 U.S. at 107-108, 97 S. Ct. at 29293; *Norton,* 122 F.3d

at 292; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Fielder v. Bosshard*, 590 F.2d 105,

107 (5th Cir. 1979); *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Moreover, it is well

settled that relief is unavailable under § 1983 for claims grounded only in negligence. *See Daniels*

*v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668

(1986); *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

### Statement of Facts

1. Plaintiff was an inmate of TDCJ-CID, incarcerated at the Sanders Estes Unit at all time relevant to his complaint. (Pl.'s Amen. Compl., doc 21.)

2. Defendants Babbilli, Hocking, Iredell, and Dr. Joshi were employed by UTMB and were acting within the course and scope of their employment, and under color of state law at all times relevant to Plaintiff's complaint. (Defs.' Orig. Ans.)

3. During the relevant time period, Babbilli was a Physicians Assistant assigned to the Sanders Estes Unit.

4. During the relevant time period, Hocking was a Licensed Vocation Nurse assigned to the Sanders Estes Unit.

5. During the relevant time period, Iredell was a Registered Nurse assigned to the Sanders Estes Unit.

6. During the relevant time period, Dr. Joshi was a Medical Doctor assigned to the Sanders Estes Unit.

7. On December 19, 2007, at approximately 4:20 am, Lt. Bratcher smelled and observed smoke coming from the ceiling in the hallway of the housing area. (Defs.' App. 39.)

8. On December 19, 2007, the Maintenance Supervisor was notified at 4:45 am that the Sanders Estes' prison officials smelled smoke from the roof above the housing area. (*Id.* 37- 38.)

9. The Maintenance Supervisor noted that there was smoke in the housing area and the purge fans were turned on to relieve the area of smoke. (*Id.* 37.)

10. Shortly after noticing the smoke and notifying supervisors, Lt. Bratcher directed the evacuation of all offenders and staff from the housing area to the gym. (*Id.* 39.)

11. Afterwards, Lt. Bratcher noticed that the medical staff had come on duty. In the Medical Department, Lt. Bratcher told Nurse Hocking about the smoke and that the evacuated offenders were in the gym and would be going to the chow hall or dining room for breakfast. (*Id.*)

12. LVN Gloria Habar and Nurse Hocking observed the inmates in the hallway, lined up to go to the chow hall. (*Id.* 40-41.)

13. At that time, LVN Habar did not see any of the inmates cough, wheeze or show other

signs of respiratory distress. (*Id.* 40.)

14. LVN Hocking asked the offenders: "Is everyone okay?" The offenders all said "yes." (*Id.* 41.) The nurse checked the gym for any other offenders. No inmate voiced any complaint. The nurses returned to the Medical Department. (*Id.* 41.)

15. Lt. Bratcher observed the two nurses standing at the entrance door to the chow hall observing the offenders. (*Id.* 39.)

16. Hardeman submitted a Sick Call Request on December 19, 2007, requesting a renewal of his selenium sulfide for sores on his scalp and triple antibiotic ointment. (*Id.* 21,43.)

17. Hardeman submitted a second Sick Call Request (SCR) on December 19, 2007. He requested to be seen for chest pain, shortness of breath, sinus problems, headaches and light headedness. (*Id.* 22,43.) The sick call request was received in the Medical Department on December 20, 2007 and someone on the nursing staff, probably Nurse Hamilton, saw Hardeman for his complaints on that day. (*Id.* 19, 57.)

18. Hardeman submitted a third Sick Call Request on December 19, 2007, requesting to be seen for shortness of breath and sinus headaches. (*Id.* 23,43.) The request was received in the Medical Department on December 20, 2007, and someone on the nursing staff, probably Nurse Hamilton, saw Hardeman on that day. (*Id.* 23.)

19. Hardeman is signed in on the Nurses Sick Call Sign-In Sheet for December 20, 2007. (*Id.* 20.)

20. On December 20, 2007, Physician Assistant Babbili saw Hardeman in the Chronic Care Clinic for a follow-up appointment for his Hepatitis C. (*Id.* 43.) Hardeman did not complain to PA Babbili about chest pain, shortness of breath, sinus headache, or light headedness. (*Id.* 43.)

21. On December 21, 2007, Hardeman was scheduled to be seen during nursing sick call but he did not appear for his appointment. (*Id.*)

22. Medical providers at the Sander Estes Unit ordered chest x-rays on December 28, 2007 and again on March 28, 2008. (*Id.* 44,47.)

23. On December 28, 2007, Hardeman was seen by Leah Hamilton, RN for sinus drainage, coughing, mild chest pain, shortness of breath and light headedness. Hamilton noted that Hardeman had a history of positive tuberculin testing and upper respiratory infections. He was scheduled to see a sinus specialist in January 2008. Her examination showed Hardeman's temperature was normal. His pulse and respirations were normal, but his blood pressure was high. His skin was warm, dry, and had good color. His lungs were clear, and he had a normal pulse oximetry reading. His breathing sounds were also clear. He had a peak flow reading of 135, which is considered low. The nurse noted that Hardeman had not used the peak flow meter before and that he failed to take

forceful breaths despite repeated instructions. Hardeman also failed to use his respiratory accessory muscles which are typically used only during heavy exercise, during the stress response, during an asthma attack, or when a breathing pattern disorder exists. (*Id.* 44.)

24. Hardeman's December 28, 2007 chest x-ray showed that: "the heart and mediastinum are central. The heart is not enlarged. The lungs are not congested. No infiltrates are seen." (*Id.* 44.) These results are considered normal. (*Id.*)

25. Hardeman was seen on January 28, 2008 for a follow-up from his December 28, 2007 appointment for smoke inhalation and cough. Dr. Joshi's examination showed Hardeman had no fever, a clear nose, throat, and chest with no wheezing and that his heart and chest were normal. Based on laboratory results, Dr. Joshi diagnosed mild low white blood cell count from a viral infection or from the continued use of Ibuprofen. Dr. Joshi told Hardeman to discontinue Ibuprofen and to return for follow up in two weeks. On February 14, 2008 following an EKG and lab work, the doctor prescribed atenol to treat Hardeman's high blood pressure and prescribed aspirin and an antibiotic. A follow-up appointment was scheduled for two weeks. (*Id.*)

26. On February 17, 2008, Hardeman was seen for complaints of nasal congestion and cough. On February 25, 2008, Hardeman was seen again. His breathing was normal, and he had no signs or symptoms of shortness of breath. On March 3, 2008, his breathing sounds were clear, his pulse oximetry reading was normal, and his breathing was even and unlabored. On March 6, 2008, Dr. Joshi noted that Hardeman had been examined numerous times since the "smoke inhalation" and that the findings were normal. Dr. Johsi concluded that Hardeman had subjective symptoms with no physical findings. (*Id.* 45.)

27. Hardeman's March 28, 2008 chest x-ray results were negative for abnormalities and showed Hardeman's lung fields to be expanded and clear. (*Id.* 47.)

## Analysis

The undisputed summary judgment evidence establishes that Plaintiff was seen by medical personnel immediately following the smoke exposure incident. (*Id.* 19- 21, 23, 40-41, 43-44, 47.) Hardeman was not in respiratory distress. Moreover, x-rays in December, following the incident, and a follow-up x-ray in March showed that Plaintiff's lungs were normal. Plaintiff's lungs were x-rayed again in August 2011 when he complained of shortness of breath or wheezing. (*Id.* 119-20.) The chest x-ray showed no abnormalities and clear lungs. (*Id.*)

Dr. Steven Bowers, M.D., is licensed by the Texas Medical Board and currently the Legal

Coordinator and Director of the Continuing Medical Education Committee for the University of Texas Medical Branch Correctional Managed Care. Dr. Bowers reviewed all of Plaintiff's TDCJ medical records, including Plaintiff's complaints of breathing problems. Dr. Bowers found no further complaints regarding shortness of breath, sinus, or coughing from April 2008 through July 2008.

Dr. Bowers stated, "I found no evidence in the medical record to support Mr. Hardeman's claim that he suffered any lung damage as a result of the December 2007 fire at the Estes Unit." (*Id.* 47.) Further, Dr. Bowers found that Plaintiff's Jefferson County Correctional Facility medical records do not support a claim of future injury from the incident in question. (*Id.* 86-122.)

The summary judgment record shows that Hardeman was seen by a nurse, P.A., or physician every time he requested treatment. The record does not show that Movants ever refused to treat Plaintiff, or that they ever intentionally treated Plaintiff incorrectly. Plaintiff's disagreement with his medical treatment does not rise to the level of a constitutional claim. Under these circumstances, Plaintiff cannot establish that his Eighth Amendment rights were violated as a result of the denial of medical care. Plaintiff has not demonstrated deliberate indifference to a serious medical need. Nor has he shown violation of a clearly established constitutional right. Therefore, Movants, in their individual capacity, are entitled to judgment as a matter of law on the basis of qualified immunity.

**RECOMMENDATION**:

For the foregoing reasons, it is recommended that Movants' motion for summary judgment (doc. 375) be GRANTED on the basis of Eleventh Amendment and qualified immunity, that any

claims against Movants be denied, and that Movants be granted judgment as a matter of law.

SO RECOMMENDED, October 19, 2011.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).