**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **AARON MARTIN, et al.,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:08-CV-490-D |
| v. | § | |
| | § | (Consolidated with Civil Action Nos. |
| | § | 3:08-CV-0494-D, 3:08-CV-0502-D, |
| **GEORGE ZOLEY, et al.,** | § | 3:08-CV-0505-D, 3:08-CV-0974-D, |
| | § | 3:08-CV-1034-D, 3:08-CV-1101-D, |
| | § | 3:08-CV-1185-D, 3:08-CV-1299-D, |
| Defendants. | § | 3:08-CV-1495-D, and 3:08-CV-1768-D) |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. §636(b), and a standing order of reference, the District Court referred all dispositive motions to the United States Magistrate Judge for findings, conclusions, and recommendation. Before the Court for consideration is the Motion for Summary Judgment of Defendants the GEO Group, Inc. ("GEO"), George Zoley (CEO of GEO), David McCommis (Facility Administrator), Michael G. Ringer (Asst. Facility Administrator), Lt. Lonnie Bratcher, Sgt. Daniel Simpson, C.O. Marlena S. Friddle, C.O. Lonnie Morphis, Sgt. Joseph Smith, C.O. Maria A. Chapa, C.O. Deanda W. Chenault, Nurse Jane Doe, C.O. Benny Dunsworth, C.O. David S. Herrera, Sgt. Nadia R. Jackson, Sgt. Shawna Jackson, Richard Shufelt (Unit Grievance Coordinator), Sgt. Lonnie Simpson, C.O. Elaine Slavik, Lt. Frederic Tunaitis, Brenda Wilkerson (Compliance Administrator), and Joseph Wright (Fire and Safety Manager), (collectively, "Defendants") with respect to the claims of Plaintiffs Robert Villareal ("Villareal"), Aaron Martin ("Martin"), and Willie E. Hardeman ("Hardeman") (collectively, "Plaintiffs"). (Doc. 372.) The findings, conclusions and recommendation of the Magistrate Judge follow:

**FINDINGS AND CONCLUSIONS**

Plaintiffs, whose cases were consolidated, allege that they were injured due to smoke inhalation which they allegedly suffered while they were incarcerated in the D-E-F pod of the Sanders Estes Unit of the Texas Department of Criminal Justice in Venus, Texas.  The Unit is managed by the GEO Group, Inc., under contract with the Texas Department of Criminal Justice.  Plaintiffs filed their lawsuits while they were incarcerated.

In a Complaint filed March 20, 2008, Plaintiff Aaron Martin sued the GEO's CEO George Zoley; two facility administrators, David G. McCommis and Michael G. Ringer; and four correctional officers, Lt. Lonnie Bratcher, Sgt. Daniel Simpson, C.O. Marlena S. Friddle, and C.O. Lonnie Morphis.

In a Complaint filed July 29, 2008, Plaintiff Robert Villareal sued the CEO of GEO George Zoley; two facility administrators, David G. McCommis and Michael G. Ringer; and seven officers, Lt. Lonnie Bratcher, Sgt. Daniel Simpson, C.O. Marlena S. Friddle, C.O. Lonnie Morphis, C.O. Elaine Slavek, C.O. Deandra M. Chenault, and Fire and Safety Officer Joseph Wright.

In an Amended Complaint, filed June 30, 2008, Plaintiff Willie E.  Hardeman sued CEO George Zoley, Warden David G. McCommis, Assistant Facility Administrator Michael G. Ringer, Lt. Frederic Tunaitis, C.O. Marlena S. Friddle, Unit Grievance Coordinator Richard Shufelt, Compliance Administrator Brenda Wilkerson, Fire and Safety Manager Joseph Wright, C.O. Benny Dunsworth, Sgt. Lonnie Simpson, Sgt. Shawna Jackson, and four medical personnel,[1] RN Debbie Iredell, Dr. Subhash Joshi, PA Ananda Babbilli, and LVN Kerri Hocking,

Plaintiffs bring suit under 42 U.S.C. §1983, alleging a federal civil rights claim and state law

---

[1] The District Court granted judgment in favor of RN Debbie Iredell, Dr.  Subhash Hoshi, PA Ananda Babbilli, and LVN Kerri Hocking.  (Doc.  435.)

claims of negligence and gross negligence. Specifically, Plaintiffs claim that: Defendants violated their rights to a safe prison environment by refusing to acknowledge the existence of smoke in the living pod and hall, refusing to investigate the source of smoke after numerous complaints, and refusing to evacuate Plaintiffs in a timely manner, resulting in injuries to Plaintiffs. Plaintiffs contend that Defendants were thus deliberately indifferent to their health and safety in violation of the Eighth Amendment prohibition against cruel and unusual punishment. Plaintiffs also contend that Defendants were negligent or grossly negligent in responding to the health and safety risks. Additionally, Plaintiffs contend that GEO failed to properly train Defendants and failed to implement a policy that could have prevented a fire at the Sanders Estes Unit.

Defendants argue summary judgment is proper because Plaintiffs failed to raise a genuine issue of material fact showing that: (1) Defendants acted with deliberate indifference to Plaintiffs' rights to be free from cruel and unusual punishment; (2) GEO has a policy, custom, or practice of treating the rights of inmates with deliberate indifference, and the policy, custom, or practice was the direct cause of injury to Plaintiffs; (3) GEO failed to properly train Defendants, and Plaintiffs were injured as a direct cause of GEO's failure to train Defendants; and (4) Defendants were negligent or grossly negligent.

## Standard of Review

To prevail on their motion for summary judgment, the movants (Defendants) have the initial burden of showing that there is no genuine issue of any material fact and that judgment should be entered as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). Once the Defendants have pointed the court to the absence of evidence to support a claim on which they will not have the burden of

3

proof at trial, the Plaintiffs may not merely rely on their pleadings but must go beyond their pleadings and designate specific facts showing there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322; *Anderson*, 477 U.S. at 256-257; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, (1986). A plaintiffs' failure to produce proof as to any essential element renders all other facts immaterial. *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the plaintiff's favor. *See Anderson*, 477 U.S. at 248. Summary judgment is mandatory if a plaintiff fails to meet his burden. *Little*, 37 F.3d at 1076.

Plaintiffs have not responded to Defendants' motion for summary judgment.[2] While their failure to respond does not permit the entry of "default" summary judgments against them, the court has the authority to accept Defendants' evidence as undisputed. *See Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *see also Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998) (party opposing summary judgment is required to identify specific evidence in the record and articulate the precise manner in which that evidence supports her claim). Therefore, the Court

---

[2] Plaintiff Willie Hardeman has filed numerous "motions" and pleadings called "summary judgment evidence," but he has not filed a response to the summary judgment motion that complies with FED. R. CIV. P. 56(c). Even if any of Hardeman's pleadings could be considered a response to Defendants' Motion for Summary Judgment, his pleadings contain nothing but conclusory allegations and unsupported accusations. Accordingly, the Court concludes that Hardeman failed to point to competent summary evidence as required by FED. R. CIV. P. 56(c). Additionally, the Court notes that neither Plaintiff Aaron Martin nor Plaintiff Robert Villareal filed a response to Defendants' Motion for Summary Judgment as required by FED. R. CIV. P. 56(c).
 When a plaintiff has not responded to the motion for summary judgment, the court need not consider a plaintiff's answers to the United States Magistrate Judge's questionnaires in deciding the motion. *See Bookman v. Shubzda*, 945 F.Supp. 999, 1004–05 (N.D.Tex.1996) (Fitzwater, J.). This Court has not considered Plaintiffs' answers to this Court's Questionnaires.

accepts Defendants' evidentiary assertions as undisputed. *See Ragas,* 136 F.3d at 458 (court does not have the duty to sift through the record in search of evidence to support a party's opposition to summary judgment); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n. 17 (5th Cir. 1992).

Defendants are employees of GEO. Insofar as Plaintiffs sue the individual Defendants in their official capacity, the complaint is considered to be a suit against the official's government agency by which they were employed, GEO.

To the extent Plaintiffs sue Defendants in their individual capacities, the individual Defendants have raised the defense of qualified immunity. The doctrine of qualified immunity shields state officials from suit "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McClendon,* 305 F.3d at 322 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). However, the United States Supreme Court made clear in *Wyatt v. Cole* that private persons who are acting under color of law are not *automatically* immune (*i.e.,* §1983 immunity does not automatically follow §1983 liability). 504 U.S. 158, 168-69 (1992). Later, the Supreme Court concluded in *Richardson v. McKnight*, that private prison guards, unlike those who work directly for the government, do not enjoy immunity from suit in a §1983 case. 521 U.S. 399, 412 (1997). Accordingly, the Court need not consider Defendants' claim of qualified immunity.

The terms of 42 U.S.C. §1983 create a cause of action against every person who, under color of law, subjects, or causes to be subjected, any citizen to the deprivation of rights, privileges, or immunities secured by the United States Constitution and laws. 42 U.S.C. §1983; *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). Private corporation employees retained to perform prison official duties pursuant to a contract with the State, such as Defendants, are considered state

actors for the purpose of this provision. *West v. Atkins*, 487 U.S. 42, 50 (1988); *Kesler v. King*, 29 F. Supp.2d 356, 371 (1998).

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on prison officials to take reasonable measures to ensure the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Supreme Court has held that prison officials only violate this duty when: (1) a sufficiently serious deprivation has occurred; and (2) the prison official acts with "deliberate indifference" to inmate health or safety. *Id.* at 834. The Supreme Court has equated "deliberate indifference" to criminal law recklessness, which requires a person charged with recklessness to have had actual knowledge of a risk of harm. *Id.* at 836.

The deliberate indifference standard is an "extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A prison official acts with deliberate indifference "only if (1) he knows that inmates face a substantial risk of serious bodily harm, and (2) he disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. 825 at 847.

**Statement of Facts**

During the dates relevant to this litigation, Castro Roofing was replacing the roof of the Sanders Estes Unit. (Exhibit ("Exh.") A - Tunaitis Aff., p. 1; Exh. C - McCommis Aff., p. 1; Exh. D - Slavik Aff., p. 1; Exh. E - Bratcher Aff., p. 1; Exh. F - Shufelt Aff., p. 1.) Before the roofing project began, employees of Castro Roofing met with Sanders Estes facility administrators and advised them that the construction process would necessarily cause the emission of unpleasant odors. (Exh. G - Bates No. 0043.) Representatives of Castro Roofing explained that roofers would regularly torch the tar membrane on the roof and that this process would produce an odor similar to a campfire. (Exh. G - Bates No. 0043.) This process was explained to shift supervisors so that

facility employees would be aware of the odors. (Exh. G - Bates No. 0043.) During this time, the campfire odor of roofing materials permeated the buildings. (Exh. A - Tunaitis Aff., p. 1; Exh. C - McCommis Aff., p. 1; Exh. D - Slavik Aff., p. 1; Exh. E - Bratcher Aff., p. 1; Exh. F - Shufelt Aff., p. 1.)

During construction, inmates complained about the odor of the roofing materials, and when this happened, Warden McCommis and maintenance supervisor John Kelley went to the roof to speak with Castro Roofing employees about the campfire odor. (Exh. G - Bates No. 0043.) Although the construction-related odor was unpleasant, officials determined that it was not harmful to the inmates. (Exh. F - Shufelt Aff., p. 1.) The campfire odor persisted in the evening of December 18, 2007. On that date, shift supervisors turned on exhaust fans in an effort to remove the odor. (Exh. G - Bates Nos. 0043-0044.)

At approximately 4:00 a.m. on the morning of December 19, 2007, employees of the Sanders Estes Unit began to notice grey smoke coming from the ventilation system of the D-E-F pod. (Exh. E - Bratcher Aff., p. 1; Exh. B - Dunsworth Aff., p. 1; Exh. G-Bates Nos. 42.) The picket officer, CO Austin called a Code Red for fire and the staff evacuated the offenders to the gymnasium. (Exh. B - Dunsworth Aff., p. 2; Exh. E - Bratcher Aff., p. 2; Exh. G - Bates No. 0044.) Approximately ten to fifteen minutes elapsed from the time that smoke was first noticed in the D-E-F pod until the entire facility was completely evacuated. (Exh. B - Dunsworth Aff., p. 2; Exh. E - Bratcher Aff., p. 2.) After the facility was evacuated, Lieutenant Lonnie Bratcher and maintenance supervisor John Kelley went up on the roof with fire extinguishers to investigate the source of the smoke. (Exh. E - Bratcher Aff., p. 2.) They observed a small wooden plank sitting on the concrete roof underneath an air conditioning unit. (Exh. E - Bratcher Aff., p. 2.) The plank was smoldering, and they used the

fire extinguishers to extinguish the smoldering plank. (Exh. E - Bratcher Aff., p. 2.) Warden McCommis, a 30-year veteran firefighter who has served as the chief of a city's fire department, inspected the area around the smoldering board after it was discovered. (Exh. C - McCommis Aff., p. 2.) Warden McCommis determined that the board began smoldering as a result of the torching done by Castro Roofers. (Exh. G - Bates No. 0043; Exh. C - McCommis Aff., p. 2; Exh. E - Bratcher Aff., p. 2.) Inmates had been evacuated pursuant to the emergency evacuation plans when smoke was noticed coming into the housing unit through the air conditioning vent. (Exh. G - Bates No. 0044; Exh. E -Bratcher Aff., p. 1; Exh. B - Dunsworth Aff., p. 2.) When the roofing Contractor arrived at 6:15 a.m., the roofers moved the air conditioning unit and completely extinguished the fire. (Exh. G-Bates No. 42.)

## Analysis

### Eighth Amendment

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on prison officials to take reasonable measures to ensure the safety of inmates. *Farmer*, 511 U.S. at 832. The Supreme Court has held that prison officials only violate this duty when: (1) a sufficiently serious deprivation has occurred; and (2) the prison official acts with "deliberate indifference" to inmate health or safety. *Id.* at 834. The Supreme Court has equated "deliberate indifference" to criminal law recklessness, which requires a person charged with recklessness to have had actual knowledge of a risk of harm. *Id.* at 836.

The deliberate indifference standard is an "extremely high standard to meet." *Gobert*, 463 F.3d at 346. A prison official acts with deliberate indifference "only if (1) he knows that inmates face a substantial risk of serious bodily harm and (2) he disregards that risk by failing to take

8

reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

## **Official Capacity Claims**

### **Plan, Policy, or Custom**

Plaintiffs' claims against Defendants in their official capacities is a claim against GEO. The GEO Group had formed an emergency evacuation plan for evacuating the inmates in case of an emergency. Castro Roofing had told the officials that they could expect a campfire-like odor and other odors such as glue and tar that might raise complaints from inmates during re-roofing operations because the operations involved the torching of membrane used on the roof.

An investigation of the incident revealed that after the roofers had torched some tar after 4 p.m. on December 18, 2007, "the propane torch came into contact with two six-by-six nailers [which started to smoulder]. Once the membrane was torched and sealed over, the oxygen level was reduced to a level that would not support proper ignition. Although there would have been an odor of smoke, the smoke would not have been detectable because it was contained between the two-by-six nailers and the membrane. Since the smoldering nailers were located on the underneath "intake side of the [heating, ventilation, and air conditioning ("HVAC")] unit, when the temperature in the dayroom dropped to a prescribed temperature, the thermostat activated in the unit, drawing the smoke from the smoldering embers and emitting it though the HVAC system and subsequently into the dayroom." (Exh. G, Bates No. 45.)

At 10:00 p.m., the odor was sufficient to cause officials to attempt to evacuate the odor with purge fans. (*Id.*) The fans remained on for approximately 30 minutes and were shut down by the Shift Sergeant. Throughout the remainder of the evening and early morning the odor slowly returned. Lt. Bratcher and Sgt. Simpson made numerous trips to the area to determine whether the

odor was getting worse. (*Id.*) At approximately 4:15 a.m., smoke was noticed coming from the air conditioning vent, at which time the offenders were immediately evacuated to the gymnasium under the emergency evacuation plans. Staff responded according to approved policy and procedures.

Even if Plaintiffs had established the existence of a substantial risk of serious harm (which they have not), they failed to meet the threshold for proving deliberate indifference. The element of deliberated indifference follows from the principle that the "Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual punishments." *Farmer*, 511 U.S. at 837. GEO had an emergency evacuation plan which Defendants implemented shortly after grey smoke became visible. Plaintiffs have failed to point to any competent summary judgment evidence which would show that GEO had a policy, custom, or practice of treating Plaintiffs with deliberate indifference. The District Court should grant Defendants' Motion for Summary Judgment on Plaintiffs' official capacity claim that GEO had a plan, policy, or custom that resulted in cruel and unusual punishment.

### **Failure to Train**

Plaintiffs make the conclusory allegation that GEO failed to train Defendants. The failure to provide proper training may fairly be said to represent a policy for which a municipality or legally similar entity is responsible, and for which the municipality or other entity may be held liable if the failure to train actually causes injury. *Brown v. Bryan County, Okla.*, 219 F.3d 450, 457 (5th Cir. 2000). In resolving the issue of liability, "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton*, *Ohio v. Harris*, 489 U.S. 378, 390 (1989). A plaintiff must show that (1) the training policy or procedure was inadequate; (2) the inadequate training policy was a "moving force" in causing violation of the

10

plaintiff's rights; and (3) the municipality or other entity was deliberately indifferent in adopting its training policy. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010); *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996). It will not "suffice to prove that an injury or accident could have been avoided if an officer had . . . better or more training, sufficient to equip him to avoid the particular injury-causing conduct [since] . . . [s]uch a claim could be made about almost any encounter resulting in injury." *City of Canton*, 489 U.S. at 391.

In this case the undisputed summary judgment evidence shows that the staff and supervisors at Sanders Estes were briefed and apprised of the campfire odor that would emit from the roof at the Sanders Unit during construction. (Exh. G - Bates No. 0043.) The Warden and officers checked frequently with the roofers. Additionally, the summary judgment evidence shows that Plaintiffs were evacuated to the gymnasium within ten to fifteen minutes of the smoke coming into the D-E-F pod through the vents. (Exh. G - Bates No. 0043; Exh. B - Dunsworth Aff., p. 2; Exh. E - Bratcher Aff., p. 2.) Plaintiffs have failed to point to any competent summary judgment evidence to show that GEO's training of Defendants was constitutionally deficient or that constitutionally deficient training directly resulted in an injury to them. The Court recommends that the District Court grant Defendants' Motion for Summary Judgment based on Plaintiffs' conclusory allegations that GEO failed to properly train its officers.

## **Personal Capacity**

As stated, the Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on prison officials to take reasonable measures to ensure the safety of inmates. *Farmer,* 511 U.S. at 832. Deliberate indifference is an "extremely high standard to meet." *Gobert*, 463 F.3d at 346. A prison official acts with deliberate indifference "only if (1) he knows that

inmates face a substantial risk of serious bodily harm and (2) he disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

With respect to Plaintiffs personal capacity claims against Defendants, Plaintiffs have failed to point to any competent summary judgment evidence which shows deliberate indifference on the part of any Defendant. To the contrary, the uncontroverted summary judgment evidence shows that as soon as the Defendants perceived a threat to the inmates, they evacuated everyone pursuant to GEO's emergency evacuation plan. Plaintiffs' conclusory allegations, such as allegations that the fire smouldered for three days, that picket officers were sleeping and ignored inmate warnings, and that Defendants knew of the danger but refused to take any action are totally unsupported by specific references to competent summary judgment evidence. The District Court should grant Defendants judgment as a matter of law on Plaintiffs' personal capacity claims against them.

## Negligence

Plaintiffs claim that Defendants were negligent under state law. In Texas, the elements of a cause of action for negligence are (1) a legal duty; (2) a breach of that duty; and (3) damages proximately caused by the breach. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004) (citing *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002)). The elements of negligence cannot be established by mere conjecture, guess, or speculation. *Id*. at 798-99. To establish proximate cause, a plaintiff must prove two elements: cause in fact and foreseeability. *D. Houston, Inc*., 92 S.W.3d at 454. Cause in fact is established when the act or omission is a substantial factor in bringing about the injuries, and without it, the harm would not have occurred. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471-72 (Tex. 1991). "Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers his

12

negligent act creates for others." *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W. 2d 546, 550 (Tex. 1987).

Plaintiffs failed to point to competent summary judgment evidence showing that any Defendant acted in a way which proximately caused an injury to Plaintiffs. Plaintiffs have pointed to no competent summary judgment evidence to show that Defendants could foresee harm coming to Plaintiffs under the circumstances. The facility was undergoing construction on the roof at the time of the events giving rise to this litigation. (Exh. G - Bates No. 0043-0044.) Throughout this time, the staff was told by the roofers that a campfire odor would permeate the facility. (Exh. G - Bates No. 0043-0044.) No evidence shows that the campfire-like smell that eminated from the roofing operation was harmful. Defendants could not have foreseen that a smouldering log would result in grey smoke coming in though the vents after the temperature had become lower during the night. The undisputed summary judgment evidence shows that the Plaintiffs were evacuated from the housing pods ten to fifteen minutes after smoke was observed coming through the vents. (Exh. E - Bratcher Aff., p. 2; Exh. B - Dunsworth Aff., p. 2; Exh. G - Bates No .0043-0044.) Additionally, Plaintiffs have failed to point to competent summary judgment evidence of any injuries that resulted. Similarly, Plaintiffs have pointed to no competent summary evidence under which GEO could be found negligent. The Court recommends that the District Court grant summary judgment in favor of Defendants on Plaintiffs' negligence claims.

### **<u>Gross Negligence</u>**

To establish gross negligence, a plaintiff must prove the following elements: (1) when viewed objectively from the actors standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others;

13

and (2) the defendant must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). The extreme risk element may not be satisfied by a remote possibility of injury, or even a high probability of minor harm; it requires the likelihood of serious injury to the plaintiff. *Id*. "Actual awareness" means that the defendant knew about the peril, but demonstrated by its acts or omissions that it did not care. *Id*. The summary judgment evidence shows that no Defendant consciously disregarded any extreme risk of harm to Plaintiffs. As mentioned, the staff believed that any odors which might have been present in the facility at the time of the events giving rise to this litigation were the result of the roofing project. There is no summary judgment evidence which would show that any Defendant believed that any inmate was in any danger at all until they observed the black smoke at approximately 4:00 a.m. on the morning of December 19, 2007. The uncontroverted summary judgment evidence shows that housing pod was evacuated shortly after the smoke was observed. (Exh. B - Dunsworth Aff., p. 2; Exh. E - Bratcher Aff., p. 2.) In short, there is no summary judgment evidence which would show that any Defendant consciously disregarded an extreme, known risk of harm. Similarly, Plaintiffs have pointed to no competent summary judgment evidence which shows that GEO's actions could amount to gross negligence. The Court recommends that the District Court grant Defendants' Motion for Summary Judgment on Plaintiffs' gross negligence claims.

## **RECOMMENDATION**

For the foregoing reasons, the Court recommends that Defendants' motion for summary judgment (doc. 372) be GRANTED, that all of Plaintiffs' claims against Defendants be denied, and

14

that Defendants be granted judgment as a matter of law.  Additionally, the Court recommends that all pending motions be denied as moot.

      SO RECOMMENDED, January 26, 2012.

                                        _____
                                        PAUL D. STICKNEY
                                        UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within fourteen days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).